**In the Matter of the Discipline of Troy JONES, Attorney at Law.**

No. 12943.

Supreme Court of South Dakota.

Argued May 22, 1980.

Decided July 16, 1980.

R. James Zieser, Tyndall, Atty. for the Disciplinary Bd., South Dakota Bar Ass'n, for complainant.

Donald J. McClure, Redfield, for respondent.

DUNN, Justice.

The respondent, Troy Jones, was admitted to practice as an attorney at law in the courts of the State of South Dakota on the 10th day of August, 1961. Since that date, respondent has been engaged in the practice of law in several counties in the State of South Dakota.

On May 3, 1978, respondent was employed by East River Legal Services. He was assigned to work as managing attorney inside the South Dakota Penitentiary. His job was to provide free legal representations on civil matters to inmates of the penitentiary. He was provided with office space in the penitentiary. One part of respondent's responsibilities in his position with East River Legal Services was to make application for funding from the State of South Dakota for his part of the program. He told the director that he had done so when he actually had not. As a result, East River Legal Services lost part of the funding to which they were entitled. This was due to the failure of respondent to carry out his assigned duties and his misrepresentation to the director that he had done so.

Under the terms of his contract with East River Legal Services, respondent was allowed to accept private employment outside of his assigned duties only with the consent and approval of the director of the program. Such employment could be granted only under one of two sets of circumstances:

(1) He could continue to represent clients from his previous practice until he had completed their cases; or

(2) He could accept a court appointment to represent an indigent defendant in a criminal case and remit any and all compensation received from such representation to his employer, East River Legal Services.

One Darwin Kindt received a sentence of two years in the penitentiary from a South Dakota state court and a concurrent two-year sentence from federal court on charges of possession and transportation of stolen property and began serving his sentence on March 13, 1978. In August of 1978, Kindt had applied for and was denied parole. He would not be eligible to again apply for another eight months. Shortly after that he was contacted by respondent, who told him that he could have Kindt out of the penitentiary within sixty days if Kindt would give him $2,000.

Kindt reported this incident to Frederick DeVaney, an agent of the South Dakota Division of Criminal Investigation. Mr. DeVaney told Kindt that if he wished to continue to negotiate with respondent he would place a body microphone on his person and make a tape recording of everything that was said. From the information taken from that tape the referee found that respondent, in violation of the regulations of his employer, East River Legal Services, initiated a transaction and accepted money from an inmate of the penitentiary with the promise that it would be used to secure the inmate's release. Respondent neither requested permission from East River Legal Services to take on outside employment nor turned over money received for such employment to East River Legal Services. In his dealing with Darwin Kindt, respondent indicated by innuendo that he could procure a release of Kindt from the penitentiary if enough money was paid to him, leaving Kindt with the impression that he would be doing something fraudulent and deceitful.

When respondent was confronted by Mr. DeVaney and East River Legal Services, he stated that the $1,000 had been paid to him by Darwin's mother, Mrs. Kindt, for the purposes of incorporating her farm. Mrs. Kindt was then immediately contacted by phone. She stated that respondent had come to her home and asked her to state, if

anyone should ask, that she had paid him the money for incorporating her farm, but she stated that this was not true. She said that the money had been paid to get her son out of the penitentiary and that there were no negotiations with respondent in regard to incorporating her farm.

The referee found that these acts by respondent were in violation of Disciplinary Rule 1–102(A)(4), which states that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation. The referee further found that the acts of respondent are a violation of Disciplinary Rule 9–101, which requires that all lawyers avoid even the appearance of impropriety.

There is considerable testimony as to whether respondent was permitted to perform outside legal work in addition to his duties with East River Legal Services. We agree with the referee's finding that respondent was not permitted to engage in outside employment except in the very limited circumstances mentioned above. Respondent's activities are not within these exceptions. It is uncontroverted that his duties did not include obtaining the release of inmates from the state penitentiary. His duties with Legal Services covered only civil matters, and he had been given no special permission to do this type of work on the side. In fact, his duties in giving legal advice on civil matters to inmates would be seriously compromised by attempts to gain the release of these prisoners.

Respondent must have understood these restrictions, because when confronted with the evidence of a $1,000 fee from the Kindts, he stated it was for the "incorporation of a farm," instead of the reason clearly outlined on the tape. To now try and pass this off as a misunderstanding with his employer only compounds the deceit practiced on the Kindts as well as on his employer.

If respondent's dealings with the Kindts was for any legitimate purpose, it need not have been conducted in the garage, or rug room, or outpost of the penitentiary. Respondent had an office in the penitentiary complex where his legitimate business was carried on. Respondent's statements to the Kindts "that it took money to get out of the institution," and that he was "playing golf with the Judge," while not determined by the investigation to be linked to any specific acts of impropriety by respondent, further substantiates that respondent violated Disciplinary Rules 1–102(A)(4) and 9–101. A brief excerpt from the tape of the conversation between Kindt and respondent clearly implies that respondent was engaged in improper activity:

Kindt—Well, this was what . . . you know, I was talking to Bobby a little bit here . . .

Jones—You tell me your concern and I'll answer it . . .

Kindt—And, ah, he said that there is some kind of a, you know, maybe it's a payoff or something that . . .

Jones—You don't care, do ya? You don't care, do ya?

Kindt—Not as long as I'm guaranteed to get out of here.

Jones—You bet. And that's, ah, it's just like you got cancer. You don't care how the doc cures ya, do ya?

Kindt—But I'm, you know, I mean if it's a payoff, fine.

Jones—You couldn't care less. Could ya? If you walk out of here in thirty days, do you care?

Kindt—I don't.

Jones—I wouldn't either. So, so don't ask me any questions how I get ya out of here, 'cuz I'm not going to tell ya anyway.

Kindt—Yah, right.

Jones—And whether it's a payoff or what it is—Bobby can guess, you can guess— *I'm* the only guy that's going to know and I'm not going to tell anybody.

The Disciplinary Board of the State Bar of South Dakota found that there was sufficient evidence to indicate that respondent was addicted to alcohol. The referee found insufficient evidence to warrant a finding that respondent is currently an alcoholic. We agree with the referee. There was evidence that alcoholism had been involved when respondent resigned from his job with the South Dakota Retirement System. He

later attended an alcohol treatment center, however, and there was no evidence to show that his competence is currently impaired by alcohol.

We do find substantial evidence to warrant the referee's finding No. IV that the acts of respondent are in violation of Disciplinary Rules 1–102(A)(4) and 9–101.

We adopt the recommendation of the referee and determine and order that respondent be suspended from the practice of law in South Dakota for one year beginning on August 1, 1980.

It is further ordered that as a condition precedent to application for reinstatement under the provisions of SDCL 16–19, respondent shall:

(1) Repay the $1,000 given to him by the Kindts; and

(2) Pay into the office of the clerk of the Supreme Court the sum of $200 to apply on the costs and expenses of this proceeding.

All the Justices concur.